UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| RONNIE POPE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 4:22 CV 544 CDP |
| ) | |
| CLIFFORD BARRINGER, *et al.*, ) | |
| ) | |
| Defendants. ) | |

# MEMORANDUM AND ORDER

This matter is before the Court on defendant City of St. Louis's motion to dismiss Ronnie Pope's municipal liability claim in his amended complaint. I denied a similar motion to dismiss as moot after Pope amended his complaint, but the City argues that the amended complaint still fails to state a claim. I agree.

## Background

Pope alleges that, while awaiting trial at the City Justice Center in May 2020, Defendant Officer Clifford Barringer repeatedly hit him with a broomstick through a hole in his cell door and threatened to kill him. Pope brings three claims against Barringer: one count of failure to protect under the Eighth and Fourteenth Amendments, one count of battery, and one count of assault. Pope also brings one 42 U.S.C. § 1983 municipal liability claim against the City. Specifically, he alleges that the City "had certain policies, practices, and customs that were

pervasive, accepted, and widespread at both of its detention facilities, the City Justice Center and the Workhouse, that resulted in Mr. Pope's constitutional rights being violated." (ECF 1 at p. 6; ECF 23 at p. 6.)  Pope also appears to allege that Barringer's attack shows that the City did not adequately train its officers.  (ECF 1 at p. 12; ECF 23 at p. 15.)

In his original complaint, Pope attempted to support his claim against the City by citing several outside sources, including a 2009 report from the ACLU and news articles which he claims exhibits the City's practices, policies, and customs. These sources allegedly describe "correctional officers' assaults on inmates, inmate assaults on other inmates directed by correctional officers, systemic cover up of incidents, failure to make reports, sexual misconduct, negligence resulting in death, questionable hiring and training, and many more significant issues." (ECF 1 at p. 7; ECF 23 at p. 7.)  Pope claimed that these sources show that the City "was previously on notice of [the City's] unofficial customs of allowing violence against inmates, failure to report violence against inmates, and correctional officer's failure/unwillingness to intervene to protect inmates." (ECF 1 at p. 12; ECF 23 at p. 15.)

The City moved to dismiss, arguing that these facts were insufficient to show that a municipal policy or custom caused Barringer's attack.  After the City filed its motion, Pope filed an amended complaint providing additional examples

of misconduct from the 2009 ACLU report and various news sources. His amended complaint also cites the City's Division of Correction's publicly available data showing 109 incidents or allegations of use of force by Corrections Officers from January 2020 to May 2020, as well as other pending litigation by City Justice Center detainees alleging that officers unconstitutionally used mace on multiple occasions in 2020 and 2021. (ECF 23 at pp. 9-10.)

On November 8, 2022, the City moved to dismiss again, raising the same arguments from its first motion to dismiss. Specifically, the City argues that Pope has failed to allege facts sufficient to show the existence of a municipal policy or custom, that the City was deliberately indifferent to the policy or custom, or that this deliberate indifference caused the attack.

**Standard of Review**

A claim may be dismissed if it fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In ruling on a motion to dismiss, the Court "must accept as true all of the complaint's factual allegations and view them in the light most favorable to the Plaintiff[ ]." *Stodghill v. Wellston School Dist.*, 512 F.3d 472, 476 (8th Cir. 2008). However, "the Court is not bound to accept as true a legal conclusion couched as a factual allegation." *Warmington v. Bd. of Regents of Univ. of Minn.*, 998 F.3d 789, 796 (8th Cir. 2021) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). To avoid dismissal, a complaint must include "enough

facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.  The Plaintiff need not demonstrate the claim is probable, only that it is more than just possible.  *Id.*

In reviewing the complaint, the Court construes it liberally and draws all reasonable inferences from the facts in Plaintiff's favor.  *Monson v. Drug Enforcement Admin.*, 589 F.3d 952, 961 (8th Cir. 2009).  The Court generally ignores materials outside the pleadings but may consider materials that are part of the public record or materials that are necessarily embraced by the pleadings.  *Miller v. Toxicology Lab. Inc.*, 688 F.3d 928, 931 (8th Cir. 2012).  Matters necessarily embraced by the pleadings include "matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint whose authenticity is unquestioned."  *Zean v. Fairview Health Servs.*, 858 F.3d 520, 526 (8th Cir. 2017) (quoting *Miller*, 688 F.3d at 931 n.3).

## Discussion

A municipality may be liable under § 1983 if an "action pursuant to official municipal policy" caused a plaintiff's injury.  *Monell v. Dep't of Soc. Servs. of City*

*of New York*, 436 U.S. 658, 691 (1978). "Official municipal policy includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law." *Connick v. Thompson*, 563 U.S. 51, 61 (2011). In limited circumstances, official policy may also include a government's decision not to train certain employees about their legal duty to avoid violating citizens' rights. *Id.* In each case, the official policy must be "the moving force of the constitutional violation." *Monell*, 436 U.S. at 694.

Pope alleges that the City's "customs of allowing violence against inmates, failure to report violence against inmates, and correctional officers' failure/unwillingness to intervene to protect inmates" was the moving force behind Barringer's attack. (ECF 23 at p. 15.) He also alleges that the City "did not provide training to prevent such assaults from taking place in the future and to make sure that correctional officers on duty take measures to adequately protect detainees from physical attacks from other correctional officers." (ECF 23 at p. 15.) However, Pope fails to allege facts to sufficiently support either of these theories.

To state a claim for *Monell* liability based on custom or usage, Pope must allege facts sufficient to show (1) a continuing, widespread, and persistent pattern of unconstitutional misconduct by the government's employees, (2) deliberate

indifference or tacit authorization of such conduct by policymaking officials after notice of the conduct, and (3) that the custom was a moving force behind a violation of his constitutional rights.  *See Johnson v. Douglas Cnty. Med. Dep't*, 725 F.3d 825, 828 (8th Cir. 2013); *Jane Doe A v. Special Sch. Dist. Of St. Louis*, 901 F.2d 642, 646 (8th Cir. 1990).  "The pattern of unconstitutional conduct must be so pervasive and widespread 'as to have the effect and force of law.' " *Brewington v. Keener*, 902 F.3d 796, 801 (8th Cir. 2018) (quoting *Andrews v. Fowler*, 98 F.3d 1069, 1075 (8th Cir. 1996)).

In attempting to allege such a pattern of unconstitutional conduct, Pope cites several outside sources, such as news reports, surveys conducted by special interest entities, and statements made by the Mayor of St. Louis calling for reform of the Justice Center and the Workhouse.  Many of the allegations of unconstitutional conduct derive from a 2009 ACLU report, and only a handful of these incidents involve officer violence against inmates or detainees:

> On February 23, 2006, a detainee named Samual Aye was assaulted by a Lieutenant and that corrections officer failed to report using force against Mr. Aye, failed to seek medical attention for that detainee (i.e., for the deep laceration above and across the corner of the detainee's left eye), and confined Mr. Aye in a secluded area without adequate supervision (See, page 8).
> On February 15, 2007, a juvenile detainee named D.S. (age 16) was assaulted by first shift corrections officers who stomped, punched and kicked him in the face. The corrections officer who found him reported his injuries were consistent with his allegations against the COs. More importantly, that Correction Officer that reported the alleged COs assailants said the administrative response to the assault

- 6 -

> committed by the first shift officers in question was to take no action against them. (See, page 6-7).
>
> One Correction Officer claimed that over a period of weeks in 2007, an inmate named Peggy Jones was repeatedly and brutally beaten by a Captain without cause. The corrections officer claimed that she witnessed said captain enter Jones' cell several different times to savagely attack her. The officer claims, "she beat this child until it was pathetic". (See, page 10).
>
> One Correctional Officer claimed that an inmate was taken into an isolated area by a CO (CO Paul Tillery) and that CO took a soap dispenser and busted his head. That corrections officer claimed the alleged corrections officer assailant (CO Tillery) was not disciplined by superiors but was just transferred to the St. Louis City Justice Center because of this incident. (See, page 15).

(ECF 23 at p. 9.)  Pope identifies only one specific instance of officer violence against an inmate in the last thirteen years:

> On December 10, 2010, an inmate Kurt Wallace tried to hang himself in his city jail cell.  According to reports of family members and other inmates, once the correction officers at the St. Louis City Justice Center cut Mr. Wallace down from the bed sheet, they beat him—just as they had been doing nightly since he arrived.

(ECF 23 at p. 9.)

This Court recently dismissed a municipal liability claim with similar allegations.  *See McKinley v. Perkins*, No. 4:21CV1015 HEA, 2022 WL 2663739 at *3-4 (E.D. Mo. July 11, 2022).  Like Pope, the plaintiff in *McKinley* alleged that the City had a policy of allowing prisoner abuse at the Judicial Center and cited the same ACLU report, news stories, and statements made by the Mayor of St. Louis. However, the Court found that these allegations failed to show the existence of a

continuing, widespread, and persistent pattern of misconduct. It noted that "[p]laintiff states merely conclusions and inapplicable statements." *Id.* at *7.

I am likewise skeptical that these allegations are sufficient to establish a continuing, widespread, and persistent pattern of misconduct. Unlike the plaintiff in *McKinley*, Pope describes many of the incidents in the ACLU report, but those incidents are more than a decade old, and Plaintiffs allege no specific instance of officer-on-inmate violence in the last decade. Pope cites publicly available data showing that were 109 incidents or allegations of use of force in the City Justice Center and Workhouse between January 2020 and May 2020, as well as other pending litigation against the City, but he fails to provide context showing that these uses of force were unconstitutional or sufficiently similar to the conduct at issue. *See also Briggs v. City of St. Louis*, No. 4:22 CV 282 DDN, 2022 WL 16635123, at *4 (E.D. Mo. Nov. 1, 2022) (Plaintiff "does not allege any facts such as common circumstances, conditions, unconstitutional conduct, policies, or actors that allow the Court to reasonably infer that the referenced series of deaths constitutes a pattern that put officials . . . on notice.").

But even if these facts adequately showed a pattern of unconstitutional conduct, Pope alleges no facts tending to show that the City was deliberately indifferent to this conduct or that this indifference caused Barringer's attack. He merely concludes, "[a]s a direct and proximate cause of the policies, customs,

- 8 -

practices, actions and inactions of Defendant City of St. Louis, Mr. Pope suffered injury[.]" (ECF 23 at p. 16.) I may not credit this conclusory allegation. *See Warmington v. Bd. of Regents of Univ. of Minn.*, 998 F.3d 789, 796 (8th Cir. 2021). *See also Ball-Bey v. Chandler*, 415 F. Supp. 3d 884, 897 (E.D. Mo. 2019) ("[Plaintiff] pleads no facts from which the Court can infer a direct causal link, instead he resorts only to conclusory allegations[.]")

Pope's failure to train theory fares no better. To state a viable § 1983 claim against the City for its alleged failure to adequately supervise and train its employees, Pope must allege facts sufficient to show that (1) "[the City's] officer-training programs were inadequate; (2) [the City] was deliberately indifferent to the rights of others in adopting these training practices, and [the City's] failure to train was a result of deliberate and conscious choices it made; and (3) [the City's] alleged training deficiencies caused [Pope's] constitutional deprivation." *Ulrich v. Pope Cnty*, 715 F.3d 1054, (8th Cir. 2014) (citing *Andrews v. Fowler*, 98 F.3d 1069, 1076 (8th Cir. 1996)).

Pope fails to allege facts sufficient to make any of these showings. Pope's sole allegation relating to the City's officer-training programs is that,

> Upon information and belief, in response to Defendant Barringer's assault against Mr. Pope, Defendant City of St. Louis did not provide training to prevent such assaults from taking place in the future and to make sure that correctional officers on duty take measures to adequately protect detainees from physical attacks from other correctional officers.

(ECF 17 at p. 15.). This conclusory allegation is insufficient to show that the City was deliberately indifferent to the rights of City inmates in adopting its training practices, that the City's failure to train was a result of deliberate and conscious choices it made, or that these deficiencies caused Barringer's attack.

Ignoring Pope's legal conclusions and irrelevant allegations, I agree with the City that Pope has failed to allege facts showing the existence of any custom, policy, or practice of the City to violate the constitutional rights or pretrial detainees, or that the City caused Barringer to repeatedly hit him with a broom through his cell-door. I will therefore grant the City's motion to dismiss.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant City of St. Louis's Motion to Dismiss [27] is **GRANTED** and Count II of the Amended Complaint is dismissed without prejudice.

                                                _____
                                                CATHERINE D. PERRY
                                                UNITED STATES DISTRICT JUDGE

Dated this 21st day of February, 2023.